FILED 07 JUN '11 12:21 USDC-ORE

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JOSHUA SCHLOSSBERG,                                                                10-6014-TC

                        Plaintiff,

            v.                                                                                  OPINION AND ORDER

BILL SOLESBEE, et.al.,

                        Defendant.

COFFIN, Magistrate Judge:

Plaintiff alleges claims under 42 U.S.C. § 1983 and Oregon state law. Before me is defendants' motion for partial summary judgment (#20) filed on January 27, 2011. I heard oral argument on the motion April 21, 2011. The parties have consented to magistrate judge jurisdiction, and, for the reasons below, I grant the motion in part.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment:

if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Page 1 - OPINION AND ORDER

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. *Id.* In meeting this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. *Anderson*, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* On the other hand, if, after the court has drawn all reasonable inferences in favor of the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. *Id.*

## BACKGROUND

Plaintiff was active in "ecosystem advocacy," which included organizing, participating in, and distributing information about environmental campaigns. In 2009, plaintiff was active in a campaign to lobby the owner of Roseburg Forest Products–who was also chairman of the board of Umpqua Bank, to stop allegedly damaging environmental practices. On March 13, 2009, plaintiff and another volunteer conducted "public outreach and education" for the campaign by setting up a table in front of Umpqua Bank in downtown Eugene and handing out leaflets to Bank customers and other passersby. According to plaintiff, he was not blocking the sidewalk or harassing people.

The Eugene Police Department received a complaint about plaintiff's leafleting. Eugene Police Officer Caryn Barab dispatched herself to the Bank and contacted plaintiff. Plaintiff informed Barab that he was recording their interaction with a digital camera. Following a brief discussion, Barab returned to her car. After about a minute, Barab returned to get plaintiff's name, then immediately left.

Shortly after Barab left for the second time, defendant Eugene Police Sergeant Bill Solesbee walked past plaintiff into the Bank. As Solesbee walked past, he told plaintiff he had to leave. Plaintiff replied that his activities were legally protected. Nonetheless, while Solesbee was in the Bank, plaintiff decided to leave. Just as plaintiff was folding his table, Solesbee emerged from the Bank. As Solesbee approached him, plaintiff took out his digital camera and told Solesbee twice that he was recording their conversation. Plaintiff turned the camera on record and held it between his chest and navel. Solesbee recalls hearing plaintiff tell him something as he exited the Bank. Solesbee thought plaintiff might have asked whether he could record Solesbee. During Solesbee's deposition he testified that he "didn't really pay attention" to what plaintiff was saying as he approached and heard plaintiff say, "'can I' or 'I'm going to' or something about recording me." (#58 at 20 (p.79:8-13)).

Plaintiff and Solesbee had a brief discussion. The two disagreed about whether plaintiff's leafleting violated the law–Solesbee asserted plaintiff could only protest if he was moving and not blocking the street; plaintiff argued that a lawyer had recently advised him that setting up a stationary table complied with the law. Midway through the exchange, Solesbee asked plaintiff if he had been at the Bank two weeks ago, referring to an incident where protestors had entered the Bank and police had been called. Plaintiff said he was there but had remained outside at his table the entire time.

Page 3 - OPINION AND ORDER

The interaction ended when Solesbee saw plaintiff's camera near his waist and asked if plaintiff was taping him. When plaintiff said he was–and that he had told Solesbee that twice, Solesbee replied that plaintiff had only asked if he could tape the interaction. Then, Solesbee grabbed plaintiff's camera, twisted his arm behind his back and took him to the ground. Solesbee pushed plaintiff's head into the sidewalk and placed his knee on plaintiff's neck. Solesbee did not tell plaintiff he was under arrest until after he took him to the ground.

Plaintiff was taken into custody. Because he indicated he was injured, the Eugene Fire Department arrived to examine him. After he was examined, he was taken to jail and held for about five hours. Solesbee charged plaintiff with unlawful interception of communication and resisting arrest. The district attorney declined to prosecute. Plaintiff filed a complaint with the Office of the Police Auditor ("Auditor") about Solesbee's conduct. Internal Affairs ("IA") and the Auditor conducted an investigation, and defendant City of Eugene Police Chief Pete Kerns ultimately decided that Solesbee's conduct was within police policy.

In their briefing, the parties reference two other incidents which, although separate from the March 13 incident, are relevant to some of plaintiff's claims. First, on May 30, 2008 plaintiff witnessed Solesbee and other officers arrest Ian Van Ornum ("Van Ornum incident"). Plaintiff was among a number of individuals who filed complaints with the Auditor regarding Solesbee's conduct during the Van Ornum incident. Plaintiff was also among a group that asked the district attorney's office to conduct a criminal investigation into Solesbee's conduct, and he was featured in two front page Eugene Register Guard newspaper articles regarding his complaints against Solesbee. Plaintiff asserts that, based on the complaints he filed, the newspaper articles (one of which had a clear photo of plaintiff's face), and Barab requesting plaintiff's name, Solesbee must have known who he was

Page 4 - OPINION AND ORDER

during the March 13, 2009 encounter. According to defendants, Solesbee was not told the identities of any individuals who filed complaints against him, and only became aware that plaintiff had filed a complaint regarding the Van Ornum incident after plaintiff filed his lawsuit.

The other incident occurred on February 27, 2009 ("February incident"). On that day, protestors entered and occupied the Umpqua Bank in downtown Eugene. According to defendants, Solesbee was present at the incident and contacted the group's leader, but did not make any arrests or issue citations. As noted above, plaintiff was present during the incident, but remained at his table handing out leaflets. The parties agree that, during the March 13, 2009 encounter, Solesbee asked plaintiff if he had been at the February incident, and plaintiff admitted he had been.

Plaintiff's first amended complaint alleges 42 U.S.C. § 1983 claims against Solesbee and Kerns in their individual capacities. He also brings a § 1983 claim and state law assault and battery claims against the City of Eugene.

## DISCUSSION

Defendants move for summary judgment on all of plaintiff's claims except for three–his § 1983 excessive force and state law assault and battery claims.

**I.    False Arrest (third claim for relief)**

To move forward on a 42 U.S.C. § 1983 claim, a plaintiff must establish that his arrest was not supported by probable cause. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). "Probable cause exists when the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the plaintiff had committed or was committing an offense." *Hart v. Parks*, 450 F.3d 1059, 1065-66 (9th Cir.2006) (citations and quotations omitted).

Page 5 - OPINION AND ORDER

### A.   Probable Cause

Solesbee arrested plaintiff for violating Oregon's Obtaining Whole or Part of Communication Statute, which prohibits recording any conversation if all the participants in the conversation are not "*specifically informed* that their conversation is being obtained." Or. Rev. Stat. 165.540(1)(c) (emphasis added). The Oregon Court of Appeals has interpreted Or. Rev. Stat. 165.540(1)(c) as requiring that a party receive "an unequivocal warning" that the conversation is being "obtained." *State v. Bichsel*, 101 Or. App. 257, 262-63 (1990). In *State v. Haase*, the Oregon Court of Appeals clarified *Bichsel*, stating "the statute does not require any particular form of warning." 134 Or. App. 416, 419 (1995). "In substance it requires that the participants be informed that the conversation is being recorded or otherwise 'obtained' by some device. As long as the warning *reasonably* imparts that information, it is sufficient." *Id.* (emphasis added). The *Haase* court further held that the test is "not whether [the participant] was aware that the conversation was being recorded; it is whether the [person recording] gave [the participant] the required information." *Id.* at 420. *Haase* found that Or. Rev. Stat. 165.540(1)(c) does not require that party understand the warning or even consent. It requires only that the party recording reasonably inform participants that the conversation is being recorded. *Id.* at 420, 420 n. 4.

The facts, taken in a light most favorable to plaintiff, establish an issue of fact regarding whether Solesbee had probable cause to arrest plaintiff for a violation of Or. Rev. Stat. 165.540(c)(1). As noted, the Oregon Court of Appeals has interpreted the statute as requiring that conversation participants be given a warning that reasonably imparts the information that the conversation is being recorded. *Haase*, 134 Or. App. at 419. The parties agree that, as Solesbee approached plaintiff, plaintiff said something about recording Solesbee. Plaintiff's version is that

Page 6 - OPINION AND ORDER

he twice told Solesbee he was recording their conversation. Solesbee's account is that, although he was not paying attention to what plaintiff was saying, he heard something about "'can I' or 'I am going to' or something about recording me." Whether plaintiff said "I am recording you," thus giving Solesbee the required warning, or said "can I record you," is a disputed fact which must be resolved by a jury.

Solesbee's contention that the notice was ineffective because plaintiff shouted at him as he was approaching or because he was not paying attention to what plaintiff was saying is not persuasive. As noted above, Or. Rev. Stat. 165.540 does not require that the defendant understand the warning.[1] *Haase*, 134 Or. App. at 420 (internal citations omitted). Moreover, *Elkins v. Washington County*, upon which defendants rely to establish that plaintiff did not properly warn Solesbee, is easily distinguished. 2007 WL 1342155 (D. Or. May 3, 2007). In *Elkins*, the district court granted summary judgment on the plaintiff's claim that officers did not have probable cause to arrest him for a violation of Or. Rev. Stat. 165.540(c)(1). *Id.* at *5. In finding that no triable issue of fact existed, the court noted that even if the plaintiff's statement to two officers "don't get your panties in a wad, I've got the camera on ya" was sufficient to comply with the statute, the plaintiff never informed a third officer that he was recording the conversation. *Id.* Thus, the plaintiff had not satisfied the statute's notification requirements with respect to that third officer. *Id.* In the instant case, it is undisputed that plaintiff communicated something about recording the conversation to Solesbee as he approached. A reasonable jury could find that plaintiff gave Solesbee sufficient warning that he was recording the conversation and, therefore, find for plaintiff on his false arrest

---

[1] In *Haase*, the defendant was in a "'stupor'" and "not responding appropriately to the officer." *Id.* at 134 Or. App. at 420.

Page 7 - OPINION AND ORDER

claim.

## B. Qualified Immunity

Solesbee contends that he is entitled to qualified immunity on plaintiff's false arrest claim because a reasonable officer could have believed that it was lawful to arrest plaintiff for a violation of Or. Rev. Stat. 165.540(c)(1). Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. " *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In deciding whether a government official is entitled to qualified immunity against a § 1983 claim, a court considers two issues. First, a court must decide whether the facts that a plaintiff has alleged or has proven make out a violation of a constitutional right. If they do not, then the defendant is entitled to qualified immunity. Second, the court must decide whether the right at issue was clearly established at the time of the government official's alleged misconduct. If it was not, then the defendant is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S 223 (2009); *Saucier v. Katz*, 533 U.S. 194 (2001). The key inquiry is whether it would be clear to a reasonable government official that the official's conduct would was unlawful in the situation the official confronted. Prior case law must give the government official clear warning that the official's conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730 (2002).

To determine whether an officer is entitled to qualified immunity when the existence of probable cause to arrest is an issue requires me to consider whether a hypothetical officer reasonably could have believed that there was probable cause to arrest plaintiff for recording a communication without sufficient warning based on the facts and circumstances known to Solesbee at the time of the arrest. In resolving the merits of an unlawful arrest claim, a court must ask whether a reasonable

Page 8 - OPINION AND ORDER

officer could have believed that there was probable cause to arrest under the circumstances. Because of this parity, the Ninth Circuit, as well as other federal appellate courts, has repeatedly held that the inquiry as to whether officers are entitled to qualified immunity for an arrest without probable cause is the same as the inquiry on the merits of the unlawful arrest claim. *Katz v. U.S.*, 194 F.3d 962, 968 (1999)(resolving an apparent conflict between numerous panel opinions and an en banc opinion in *Hammer v. Gross*, 932 F.2d 842 (9th Cir. 1991) with *Hammer* suggesting that excessive force cases equated an inquiry on the merits with the qualified immunity analysis and other cases suggesting the two lines of inquiry are distinct) (*reversed on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001); *see also Mahoney v. Kesery*, 976 F.2d 1054, 1057-59 (7th Cir.1992) (Posner, J.) (holding that where facts are disputed the qualified immunity inquiry merges with the underlying merits of the case).

The difficulties in applying a qualified immunity analysis notwithstanding, one thing is certain and dispositive: where the essential facts concerning what an officer knew or did are in dispute, "it is clear that these are questions of fact for the jury to determine." *Headwaters Forest Defense v. County of Humboldt*, 240 F.3d 1185, 1207 (9th Cir. 2000). Thus, I find that whether probable cause existed to arrest plaintiff remains an issue for the jury to determine and that Solesbee is not entitled to qualified immunity.

## II.   Unreasonable Search and Seizure of Plaintiff's Camera (second claim for relief)

Solesbee argues he is entitled to summary judgment on plaintiff's search and seizure claim because his search of plaintiff's camera was incident to a lawful arrest. Solesbee argues that his search was contemporaneous to arrest and exigency existed–specifically, Solesbee was concerned about the camera's battery life; he was not sure whether the recordings were saved or how to save them and did not know if the camera would turn back on if it shut off due to lack of power.

Page 9 - OPINION AND ORDER

Moreover, the evidence of plaintiff's crime–unlawful interception of communications, "could only be found on the camera." (# 69 at 7).

It is well settled that searches conducted without a warrant are per se unreasonable under the Fourth Amendment. *Katz v. United States*, 389 U.S. 347, 357 (1967). Among the exceptions to this rule is a search incident to a lawful arrest. *Weeks v. United States*, 232 U.S. 383, 392 (1914). This exception is based in interests in officer safety and evidence preservation that are typically implicated in arrest situations. *United States v. Robinson*, 414 U.S. 218, 230-34 (1973). Under *Robinson* an arrest must be both custodial and lawful to support a search incident to arrest. *U.S. v. Mota*, 982 F.2d 1384, 1387 (noting that state law governing arrests is relevant to assessing the constitutionality of a search incident to arrest).

Here, it is not clear that plaintiff's arrest was lawful. As noted above, there exist issues of fact concerning whether Solsebee had probable cause to arrest plaintiff for unlawfully obtaining communications.[2] Accordingly, a reasonable jury could find for plaintiff on his unlawful search and seizure claim.

## III. Retaliation for Protected Activities (fourth claim for relief)

Plaintiff's retaliation claim makes a general assertion that Solesbee deprived him of his "right to freedom from retaliation for activities protected by the First Amendment," but fails to specify either plaintiff's protected activity or Solesbee's alleged action. (#48, ¶¶ 51-53). During his

---

[2] Moreover, I am not persuaded that Solesbee's uncertainty about the camera's battery life constitutes exigent circumstances. If such were the case, every camera or other electronic device would be subject to a warrantless search because the seizing officer would virtually always be ignorant of the remaining battery life in the device. *See, e.g., United States v. Park*, 2007 WL 1521573, *9-10 (May 23, 2007, N.D. Cal.) (observing that searches of older electronic devices, such as beepers and old cellular telephones, implicated significantly fewer privacy interests than modern electronic devices, which can store more information).

Page 10 - OPINION AND ORDER

deposition, plaintiff testified that Solesbee retaliated against him for filing a criminal complaint in the Van Ornum incident and for his prominent prior activities as a protestor and organizer. (#22, attach. 1 at 45-47). In his response in opposition to summary judgment, plaintiff specified that "Solesbee's conduct...violated Plaintiff's civil rights because the conduct was a retaliatory response to Plaintiff's insistence on exercising his First Amendments to leaflet in a public forum and to question Solesbee's misstatements of law." (#54 at 16). Defendants argue, however, that plaintiff cannot establish a causal connection between his constitutionally protected activity and his March 13, 2009 arrest under either theory.

"State action designed to retaliate against and chill political expression strikes at the very heart of the First Amendment." *Gibbs v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). A police officer violates a citizen's First Amendment rights if his actions would "chill or silence a person of ordinary firmness from future First Amendment activities" and the police officer intended to inhibit such activities by his actions. *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300-01 (9th Cir. 1999).

Defendants do not argue that plaintiff's conduct was not constitutionally protected or that Solesbee's conduct would not deter a person of ordinary firmness from continuing to engage in the protected activity, which in this case was filing complaints against officers for misconduct and engaging in "ecosystem advocacy." Thus, the main focus of my inquiry is whether there is evidence in the record that Solesbee intended to chill the protected conduct–filing complaints against officers for misconduct and engaging in ecosystem advocacy, including handing out leaflets, by his actions. To establish the requisite intent, a plaintiff must show that deterrence of the protected activity "was a substantial and motivating factor in [the defendant's] conduct." *Mendocino*, 192 F.3d at 1300.

Page 11 - OPINION AND ORDER

Defendants argue that plaintiff cannot show a causal relationship between his protected activity and Solesbee's actions because he cannot show that Solesbee knew who he was (and that he had filed a complaint against Solesbee and/or previously engaged in protest activities) at the time of the the March 13 2009 encounter. (# 21 at 12 and #69 at 11). Defendants assert that Solesbee's motivation for contacting plaintiff was "to ensure that any demonstration activity was lawful...." (#21 at 12). Plaintiff has not offered any evidence, beyond his own conclusions, that Solesbee was aware of plaintiff's protest or complaint-filing history when Solesbee contacted him on March 13, 2009. *See, e.g., Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991) (If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists"); *see also, Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-80 (1990) (conclusory nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed"). Thus, the evidence does not establish that Solesbee's motivation for contacting plaintiff on March 13, 2009 was plaintiff's past complaint filing or involvement with protests.

During the March 13, 2009 interaction, Solesbee did ask plaintiff if he was present at the February 2009 Bank protest. The record is clear, however, that neither this nor any other past protest history motivated Solesbee to take plaintiff to the ground and arrest him. Instead, the evidence establishes that Solesbee's actions were motivated by his realization that plaintiff was videotaping their interaction.[3] In short, there is no evidence in the record that creates a factual dispute regarding whether Solesbee's actions were intended to deter plaintiff from engaging in future protests or filing

---

[3]Plaintiff has not claimed that he was arrested due to exercising his First Amendment right to videotape protests and/or police interactions.

Page 12 - OPINION AND ORDER

future police complaints. Defendants are entitled to summary judgment on plaintiff's claim for a violation of his First Amendment rights.

## IV. *Monell* Claims Against the City and Individual Supervisory Liability Claim Against Chief Kerns (Fifth Claim for Relief)

Plaintiff argues that the City of Eugene is liable for violations of his constitutional rights because it has a policy or practice of encouraging false and excessively forceful arrests. (#48 ¶ 58). He contends that the City is liable for his alleged First Amendment deprivation because it has a policy of failing to train, supervise and discipline officers regarding what conduct is protected by the First Amendment. (#48 ¶ 60). He also alleges the City is liable under § 1983 for its alleged failure to "apply constitutional law" during IA investigations. (# 48 ¶ 61). Finally, he brings a § 1983 claim against Kerns based on Kerns's alleged failure to supervise, train and/or discipline Solesbee. (#48 ¶ 59).

### A. Monell Liability

Defendants argue that the City is entitled to summary judgment on plaintiff's municipal liability claims because plaintiff cannot establish that an official policy or custom of defendant City deprived him of his Fourth Amendment rights. *Monell v. New York Dep't of Social Services*, 436 U.S. 658 690-91 (1978). A municipality is liable under § 1983 only when an action taken pursuant to an official municipal policy caused a constitutional tort. *Id.* at 690-91. The Supreme Court recently clarified that "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, __U.S.__, 131 S.Ct.1350, 1359 (2011). The court cautioned that such a claim entails a stringent standard of fault:

Page 13 - OPINION AND ORDER

> A municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train. To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. Only then can such a shortcoming be properly thought of as a city policy or custom that is actionable under § 1983.

*Id.* at 1359-60 (internal quotes and citations omitted). Further, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (internal citations omitted).

### 1. Failure to Train

According to plaintiff, the City is liable for failing to adequately train officers on First Amendment rights because the City has ignored "repeated calls" for such training and the lack of such training has lead to "repeated violations" of citizens' First Amendment rights. The record identifies one citizen (aside from plaintiff) who was arrested while leafleting on a sidewalk. The record also shows that a police auditor recommended, at least three times, that officers get more training on First Amendment standards. One of the three recommendations for more training was a "First Amendment training gap" identified in the 2008/2009 Office of the Police Auditor Annual Report.

However, plaintiff's evidence does not establish municipal liability. The existence of one prior incident does not indicate that the City was deliberately indifferent to plaintiff's rights or had a pattern of failing to train officers to comply with First Amendment Rights. *Connick*, 131 S. Ct. at 1360 ("A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate indifference for purposes of failure to train.") (quotes and citations omitted). Further, evidence that the 2008/2009 Annual Report identified a First Amendment

Page 14 - OPINION AND ORDER

training gap does not establish deliberate indifference to constitutional rights. An observation that an officer could have received more or better training is not sufficient to impose *Monell* liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). Instead, the training must be so lacking as to put policy makers on notice that the training deficiencies are causing a pattern of constitutional violations. *Id.*; *see also Connick*, 131 S.Ct. at 1360. Here, the record does not establish any pattern of First Amendment violations which would have put city policy makers on notice.

Moreover, to impose municipal liability, a plaintiff must establish that the lack of adequate training was "the moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (internal quotations omitted). Plaintiff is unable to make this showing. In his complaint and supporting briefing, plaintiff argues that Solesbee's conduct was motivated by Solesbee's desire to retaliate against plaintiff for his past protest activities and complaint filing. Thus, under plaintiff's theory, Solesbee's desire to retaliate, not any lack of training, was the moving force behind Solesbee's conduct on March 13, 2009. *City of Canton*, 489 U.S. at 391 ("the identified deficiency in a city's training program must be closely related to the ultimate injury"). And, as discussed above, plaintiff cannot establish that he was arrested for leafleting on a public sidewalk. Instead, the record establishes that Solesbee took plaintiff to the ground and arrested him for videotaping their interaction. Defendant City's motion for summary judgment on the *Monell* failure to train officers on First Amendment rights claim is granted.

2.  **Failure to Apply Constitutional Law During the IA Process**

Plaintiff argues that the City is liable for failure to adequately address alleged violations of citizen's rights by officers during the internal affairs process. Plaintiff's specific contention is that the Eugene Police Department does not apply constitutional law when addressing IA complaints;

Page 15 - OPINION AND ORDER

thus, "the unconstitutional conduct of Eugene police officers is almost always ratified and condoned by the chief of police." (#64 at 16). A municipality may be liable under a ratification theory if it fails to reprimand, discipline or take other remedial action after a constitutional tort and that failure amounts to deliberate indifference. *Henry v. County of Shasta*, 132 F.3d 512, 520 (9th Cir. 1997) (*amended on denial of rehearing*) 137 F.3d 1372. A municipality may also be liable in cases where its police chief fails to take remedial action and establish new procedures to prevent future incidents from happening. *Watkins v. City of Oakland*, 145 F.3d 1093 (9th Cir. 1998).

The record does not support plaintiff's assertions. Kerns testified that he bases his IA complaint decisions on department expectations of officers, which have been conveyed to officers. He explained that, in the IA process, officers are subject to discipline for violating department policies. If an officer complies with department policies, he or she is not subject to discipline through the IA process, even if that policy is wrong because officers are required to comply with policy. If a policy is unlawful, the policy must be changed rather than disciplining an officer who follows it. Kerns stated that–aside from the law, information learned from the district attorney who is informed by local court decisions was used in determining whether an officer's actions comported with department policies. (#57 (plaintiff's ex. B, Kerns Depo at 57:1-25; 58:1-25; 59: 1-25)). Kerns stated that department policies were shaped by legal advice from the district attorney and whether an officer complied with these policies determined whether an officer was disciplined pursuant to an IA complaint. This statement does not establish that Kerns ignored constitutional law during the IA process. Instead, it establishes that Kerns used policy guidelines–which are not challenged as unconstitutional, to determine what was expected from a reasonable officer.

Plaintiff further argues that the findings that three IA complaints–plaintiff's, a complaint filed

Page 16 - OPINION AND ORDER

by a citizen identified in the record only by his last name "Stinette" and a complaint filed by Charlotte Ough,[4] were unfounded demonstrate that the City refuses to apply binding constitutional law when adjudicating IA complaints. Despite plaintiff's belief that these IA complaints were wrongly decided, the determination that they were unfounded and the decision not to discipline the officers involved does not establish a constitutional violation or a ratification of a constitutional violation. To establish a constitutional violation by the City, plaintiff must establish that the "policymaker [had] knowledge of the constitutional violation and actually approve[d] of it. A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir.2004) (internal citations and quotations omitted). Any IA complaint involves an adjudication of disputed facts; indeed, there may be multiple varying accounts of the event–the complainant's version, the officer's version, and other witnesses' versions. Thus, the decision makers–Kerns and former-chief Lehner, were required to make credibility determinations and then, based on those determinations, decide whether a violation had occurred and discipline was warranted. For example, there is no evidence here that when evaluating the three above mentioned IA complaints Kerns or Lehner should necessarily have credited a competing version of factual events over Solesbee's version. In short, though plaintiff presents evidence that he disagrees with the outcomes of the IA complaints, he has not set forth any evidence that a reasonable supervisor would have concluded that Solesbee conduct violated the constitution. I find that Plaintiff has failed to create a triable issue of fact, and summary judgment is appropriate on this

---

[4]Contrary to plaintiff's assertion, the record establishes that Kerns did review the two free speech complaints but determined that the officers' respective actions were "WP" (within policy). (#72 ex. 12 at 25 and ex. 11 at 2). Also, As defendants point out, the record establishes that Kerns's predecessor, Chief Robert Lehner, not Kerns, made the final decision on Ough's IA complaint. (#56 at 56).

Page 17 - OPINION AND ORDER

claim.

## B. Failure to Supervise Claim Against Kerns

Plaintiff argues that Kerns is individually liable under § 1983 for failing to properly supervise Solesbee. In support of this contention, plaintiff relies on thirty-six past IA complaints which were filed against Solesbee and the IA complaint plaintiff filed regarding the March 13, 2009 incident.

An official may be individually liable under § 1983 if "he fails to properly supervise and control subordinates; acquiesces in the constitutional deprivations complained of; or engaged in conduct that shows 'reckless or callous indifference' to the rights of others." *Larez v. City of L.A.*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations omitted). A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Finally, there must be a causal connection between the failure to supervise and the plaintiff's injury; specifically, the failure to train must result in the constitutional violation. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984).

At the onset, I observe that Kerns' failure to discipline and failure to require additional training for Solesbee as a result of the March 13, 2009 incident (which is at issue in this case) cannot give rise to § 1983 liability as it is not causally related to the constitutional deprivation alleged here. *Ybarra*, 723 F.2d at 680. Furthermore, a review of the record shows that sixteen of the thirty-six complaints against Solesbee stemmed from one incident–the Van Ornum incident, although they were filed separately by different individuals. The record further shows that although the complaints were filed by separate individuals, most, if not all, of the individuals were participants in the same environmental group. In other words, the evidence does not establish that Solesbee's conduct had

Page 18 - OPINION AND ORDER

resulted in thirty-six separate complaints by completely unconnected citizens. Thus, I cannot find, as plaintiff urges, that the high number of complaints against Solesbee is a "red flag that something is wrong." The record further establishes that the outcome of all of these complaints was a finding that Solesbee did not violate Eugene Police Department Policy. As discussed above, although plaintiff may not agree with the outcome of the adjudications, he has not set forth objective evidence establishing that the finding that Solesbee acted within department policy showed a "reckless or callous indifference" to the constitutional rights of others. *Larez*, 946 F.2d at 646. At most, plaintiff has established that he vigorously disagrees with the outcome of the IA complaints against Solesbee, but this is not enough to establish that Kerns is liable under § 1983 for failing to supervise Solesbee.

V.   **Punitive Damages under § 1983**

Defendants argue that plaintiff is not entitled to punitive damages against Solesbee as a matter of law and, therefore, his punitive damages claim should not be presented to a jury. "Punitive damages are proper under section 1983 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Ward v. City of San Jose*, 967 F.2d 280, 286 (1992) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Generally, "[t]he decision to impose such sanctions is within the exclusive province of the jury." *Kennedy v. Los Angeles Police Department*, 901 F.2d 702, 707 (9th Cir. 1989).

Defendants argue that the evidence viewed in a light most favorable to plaintiff is insufficient to establish that Solesbee acted with the requisite intent or indifference. This argument fails. In *Ward*, the Ninth Circuit found that "[t]here [was] absolutely no evidence ...that the officers acted with evil intent." Here, unlike *Ward*, a jury could reasonably conclude that Solesbee acted with

Page 19 - OPINION AND ORDER

malice or evil intent.[5] Accordingly, the decision on whether punitive damages are warranted on the remaining claims is for the jury to decide.

## CONCLUSION

Defendants' partial motion for summary judgment (#20) is granted in part. I grant summary judgment on and dismiss plaintiff's fourth (retaliation) and fifth (*Monell* claims against the City and individual claim against Kerns) claims for relief.

Defendants' motion for summary judgment on plaintiff's second (unreasonable search and seizure), and third (false arrest) claims are denied. Defendants' motion to disallow punitive damages on the remaining claims is denied. The court will set a date for trial on these claims and on plaintiffs first (excessive force), six (assault) and seventh (battery) claims during the telephone scheduling conference set for June 28, 2011 at 10:00 AM. (#78).

DATED this 7T day of June 2011.

THOMAS M. COFFIN
United States Magistrate Judge

---

[5] Although I have rejected the Van Ornum incident and the resulting multiple complaints that were filed regarding Solesbee's conduct therein as a basis for *Monell* liability against the City and individual liability against Kerns, his conduct on that occasion may be admissible under Rule 404(b) as evidence of Solesbee's intent regarding his conduct with respect to plaintiff in this action. The court directs the parties to submit briefing on this issue prior to trial.

Page 20 - OPINION AND ORDER