UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JOSHUA SCHLOSSBERG,                                                                10-6014-TC

                Plaintiff,

         v.                                                                                 OPINION AND ORDER

BILL SOLESBEE, et.al.,

                Defendant.

COFFIN, Magistrate Judge:

      Plaintiff brings this claim under 42 U.S.C. § 1983 alleging that defendant Eugene Police Sergeant Bill Solesbee violated his Fourth Amendment rights by arresting him without probable cause, using excessive force against him, and searching his camera without a warrant. During the January 3, 2012, pre-trial conference, I directed the parties to provide briefing on whether the warrantless search claim should be decided, as a matter of law, in plaintiff's favor. I have considered the parties' briefing, and, for the reasons set forth below, I find that defendant Eugene Police Sergeant Bill Solesbee's warrantless search of plaintiff's camera violated the Fourth Amendment as a matter of law.

Page 1 - OPINION AND ORDER

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. Id. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id.

**BACKGROUND**

The parties are well versed in the events giving rise to this litigation; thus, I discuss only facts material to the search of the camera. The recording on plaintiff's camera reveals the following facts. During a discussion with plaintiff, Solesbee noticed plaintiff's camera and asked if plaintiff was recording him. Plaintiff replied he was and that he had told Solesbee that twice. Solesbee responded: "no, you asked if you could tape me" and then said "give me that, it's evidence." The recording shows Solesbee coming around the table towards plaintiff. Then, the recording suddenly stops.

Solesbee and another officer took plaintiff to the ground and, during this process, Solesbee was able to take possession of plaintiff's camera. After taking plaintiff to the ground, Solesbee told him he was under arrest. Solesbee charged plaintiff with unlawful inception of communication and resisting arrest. Plaintiff was handcuffed and placed in a police cruiser. While standing at the police cruiser, Solesbee viewed the contents of plaintiff's camera without getting a warrant.

**DISCUSSION**

This case joins the growing stockpile of cases around the country which force courts to consider the warantless police search of personal electronic devices incident to arrest. As the parties point out, neither the United States Supreme Court nor the Ninth Circuit have squarely considered this issue.

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their...effects, against unreasonable searches...shall not be violated." U.S. Const., amend. IV. It is well established that searches conducted without a warrant are per se unreasonable, subject to certain "jealously and carefully drawn" exceptions. Jones v. United States, 357 U.S. 493, 499 (1958); Coolidge v. New Hampshire , 403 U.S. 443, 454-55 (1971). One such exception is a search incident to arrest, which allows officers to search an arrestee's person and the area within the arrestee's immediate control. Chimel v. California, 395 U.S. 752, 762-63 (1969); U.S. v. Maddox, 614 F.3d 1046, 1048 (9th Cir. 2010). This type of warrantless search is permitted based on the need to protect an officer's safety and to prevent the arrestee from destroying evidence. Chimel, 395 U.S. at 762-63.

These searches need not necessarily be conducted at the moment of arrest or even after arrest. This Circuit has held that a search and seizure may occur before or after the arrest if probable cause has developed for the arrest and the search and seizure are "substantially" contemporaneous. U.S. v. Smith, 389 F.3d 944, 952 (9th Cir. 2004) ("A search incident to arrest need not be delayed until the arrest is effected. Rather, when an arrest follows "quickly on the heels" of the search, it is not particularly important that the search preceded the arrest rather than vice versa."). Searches may extend to an arrestee's personal effects. United States v. Robinson, 414 U.S.218, 236 (1973).

An officer may also conduct a search of an arrestee to inventory possessions in accordance with established departmental inventory procedures. Illinois v. Lafayette, 462 U.S. 640, 648 (1983). The purpose of an inventory search is to "deter theft by and false claims against its employees and preserve the security of the stationhouse." Id. Here, I consider whether an officer may view the data within an arrestee's camera without a warrant.[1]

As previously noted, neither the United States Supreme Court nor this Circuit have considered the warrantless search of an arrestee's camera. Several other federal courts and state courts have considered the issue and reached differing conclusions.[2] In United States v. Finley, the Fifth Circuit found that Finley's cell phone was analogous to a closed container found on his person and upheld the warrantless search of his cell phone incident to arrest. Finley, 477 F.3d at 259-60. Notably, Finley had conceded that the cell phone was akin to a closed container. Id. at 260. The Finley court noted that in United States v. Robinson, the Supreme Court held that the scope of a

---

[1] As I noted in my partial summary judgment order, I am not persuaded that exigent circumstances (concern over the camera's battery life) justified review of the camera's contents. (#79 at p. 10 n. 2).

[2] Compare, e.g., United States v. Hill, 2011 WL 90130 (N.D. Cal. Jan. 10, 2011) (upholding warrantless search of iPhone photos incident to arrest); United States v. Finley, 477 F.3d 250, 259-60 (5th Cir. 2007) (upholding warrantless search of cell phone incident to arrest); United States v. Wurie, 612 F.Supp.2d 104, 109-111 (D. Mass. 2009) (same); People v. Diaz, 2011 WL 6158 (Cal. Jan 3, 2011), (same) with United States v. Quintana, 594 F.Supp.2d 1291, 1298-99 (M.D. Fla. 2009) (holding warrantless search of cell phone not justified as search incident to arrest); United States v. Park, 2007 WL 1521573 (N.D. Cal. May 23, 2007) (same); United States v. Lasalle, 2007 WL 1390820 (D.Hawai'i May 9, 2007) (finding warrantless cell phone search invalid where it was not clear that phone was on defendant's person and search not contemporaneous with arrest); State v. Smith, 920 N.E. 2d 949 (Ohio 2009) (suppressing warrantless cell phone search). I note that these cases consider warrantless searches of cell phones (many with cameras) in the context of motions to suppress in criminal cases. The majority of these criminal cases involved defendants accused of crimes involving either drugs or child pornography.

Page 4 - OPINION AND ORDER

search incident to arrest is not determined simply by the need to preserve evidence from destruction or ensure officer safety. Id. Thus, under Robinson, so long as the arrest is lawful, no additional justification is necessary to search an arrestee's person for evidence. In its holding extending the search incident to arrest exception to a search of a cell phone's contents, the Fifth Circuit reasoned that a cell phone is indistinguishable from any other container to which Robinson might apply. Id. at 259-60. The Fifth Circuit's decision failed to consider how electronic devices such as cell phones have changed the amount of personal information a person carries with him or her. Id. at 254.

In United States v. Park, the Northern District of California rejected the Finley court's approach and reasoned that advancements in cell phone technology and the volume of information citizens can store on their cell phones is relevant to a Fourth Amendment analysis. Park, 2007 WL 1521573, at *8-9. The Park court took issue with the Fifth Circuit's classification of a cell phone as an item "immediately associated with [an arrestee's] person because it was on [his] person at the time of arrest." Id. The Park court specifically stated that while cell phones might contain information similar to that contained in a wallet, the quantity and quality of the information contained on an electronic device distinguished such devices from other devices associated with a person. Id. at *8-9. The Park court instead classified cell phones as "possessions within an arrestee's immediate control," a significant distinction with respect to the timing of a search conducted incident to arrest. Although the Park court's holding technically turned on the timing of the search–at the stationhouse not immediately after the arrest, the decision makes clear that the court's disagreement with Finley was more fundamental: "[T]his Court finds, unlike the Finley court, that for purposes of Fourth Amendment analysis cellular phones should be considered 'possessions within an arrestee's immediate control' and not 'part of the person.' This is so because

modern cellular phones have the capacity for storing immense amounts of information." Id. at *8. (internal citations omitted).

The Ohio Supreme Court similarly rejected the Fifth Circuit's reasoning in Finley, finding that "a cell phone is not a closed container for purposes of a Fourth Amendment analysis" and that a cell phone's "ability to store large amounts of private data gives their users a reasonable and justifiable expectation of a higher level of privacy in the information they contain." Smith, 920 N.E. 2d at 168-69. Therefore, once police have seized a cell phone, they must obtain a warrant to search its contents. Id. at 169. The Smith court noted that traditional well-established Fourth Amendment principles support this holding since the contents of a seized cell phone furthers neither officer safety nor the preservation of evidence. Id.

Finally, in United States v. Hill, the Northern District of California rejected the ruling of its sister court in Park and found the warrantless search of a cell phone lawful as a search incident to arrest. Hill, 2011 WL 90130 at *7. Though recognizing that "modern cell phones, like computers, are capable of storing large amounts of personal information," the Hill court was unwilling absent guidance from the Supreme Court or the Ninth Circuit to conclude "that a cell-phone that is found in a defendant's clothing and on his person, as is the case here, should not be considered an element of the person's clothing." Id. (emphasis in original). In short, Hill followed Finley's reasoning and concluded that Hill's iPhone was an item immediately associated with an arrestee's person and thus subject to search so long as the arrest is lawful. Id. at *8. Implicit in the Hill court's holding is the principle that the potential volume of information an officer may recover from the search of an electronic device such as a cell phone or camera is irrelevant.

I find the reasoning in Smith and Park persuasive. Courts which have likened electronic

devices such as cell phones to closed containers fail to consider both the Supreme Court's definition of "container" and the large volume of information capable of being stored on an electronic device. In New York v. Belton, the Supreme Court stated that "container" means "any object capable of holding another object." Belton, 453 U.S. 454, 460 (1981). Consideration of an electronic device as a "container" is problematic. Electronic devices do not store physical objects which are in plain view once the containers are opened. Moreover, the storage capability of an electronic device is not limited by physical size as a container is. In order to carry the same amount of personal information contained in many of today's electronic devices in a container, a citizen would have to travel with one or more large suitcases, if not file cabinets.

Cases following the reasoning set forth in Finley and other cases allowing warrantless searches of electronic devices incident to arrest set forth a new rule: any citizen committing even the most minor arrestable offense is at risk of having his or her most intimate information viewed by an arresting officer. See e.g., Adam M. Gershowitz, The iPhone Meets the Fourth Amendment, 56 UCLA L. Rev. 27, 27 (2008); Jana L. Knott, Note, Is There an App for That? Reexamining the Doctrine of Search Incident to Lawful Arrest in the Context of Cell Phones, 35 Okla. City U.L. Rev. 445, 445-47 (2010). Newhard v. Borders illustrates this issue. Newhard, 649 F.Supp.2d 440, 444 (W.D. Va 2009). In that case, Nathan Newhard was arrested for driving while intoxicated. Newhard, 649 F.Supp at 447-49. In the course of a routine search incident to arrest, the arresting officer retrieved Newhard's cell phone from Newhard's pocket, conducted a warrantless search of the photos contents and viewed multiple photos of Newhard and his girlfriend nude and in "sexually compromising positions." Id. The officer showed Newhard's private images (which were wholly unrelated to his drunk driving arrest) to another officer. Id. Subsequently, at the stationhouse,

several more officers and stationhouse employees viewed the photos on the seized phone, notifying others that the photos were available for viewing enjoyment. Id.

Newhard, who lost his job as a public school teacher as a result of the ensuing scandal, brought a section 1983 claim against the officers. Id. The trial judge described the officers' actions as "deplorable, reprehensible and insensitive" but dismissed the case noting that the otherwise valid claim had to be dismissed under the doctrine of qualified immunity as there was no clearly established Fourth Amendment right to the contents of electronic devices. Id. At 448. Searches such as the one conducted in Newhard do not fit within the Fourth Amendment Warrant Clauses's purpose of preventing unreasonable searches by law enforcement. It is well settled that the presence of a search warrant serves a high function. Donald v. United States, 335 U.S. 451, 455-56 (1948). "The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals." Id. It is inexplicable as well as inconsistent with the privacy interest at the core of the Fourth Amendment that many courts now allow officers to conduct warrantless searches of electronic devices capable of holding large volumes of private information which may or may not have any relevance to the arrest offense.

Having found that personal electronic devices such as cameras and cell phones cannot be considered closed containers, I must consider how they should be classified. As discussed above, these devices are capable of holding large volumes of private information and legitimate concerns exist regarding the effect of allowing warrantless searches of such devices. On a daily basis a citizens may carry with them digital cameras, smart phones, ipads (or other tablets) and laptops. These devices often include some combination of email services and internet browsing. Potential information stored on them includes: phonebook information, appointment calendars, text messages,

call logs, photographs, audio and video recordings, web browsing history, electronic documents and user location information. Wayne Jansen & Rick Ayers, Nat'l Inst. of Standards and Tech., Guidelines on Cell Phone Forensics 56 (2007), available at http://csrc.nist.gov/publications/nistpubs/800-101/SP800-101.pdf.

The Fourth Amendment serves to protect an individual's subjective expectation of privacy if that expectation is reasonable and justifiable. Katz v. United States, 389 U.S. 347, 361 (1967). Electronic devices such as plaintiff's digital camera hold large amounts of private information, entitling them to a higher standard of privacy. Id. I find that warrantless searches of such devices are not reasonable incident to a valid arrest absent a showing that the search was necessary to prevent the destruction of evidence, to ensure officer safety, or that other exigent circumstances exist.[3] I further find that it is impractical to distinguish between electronic devices–between a laptop and a traditional cell phone or a smart phone and a camera, before an officer decides whether to proceed with a search of the electronic device incident to arrest. A rule requiring officers to distinguish between electronic devices is impractical. It would require officers to learn and memorize the capabilities of constantly changing electronic devices. A primary goal in search and seizure law has been to provide law enforcement with clear standards to follow. In sum because an electronic device like a camera has a high expectation of privacy in its contents, an officer may not

---

[3]As previously noted a concern about battery life would not be such a justification. One example, however, of a situation where an immediate search might be necessary is an instance where an officer had credible information that a suspect's accomplice was at a remote location and was planning to use Apple's remote-wipe program which allows an iPhone user to delete all information stored on an iPhone and restore it to factory settings with the click of a button from a remote location. If the phone is on and connected to the internet, deletion begins immediately. In such an instance, the officer would need to disconnect the phone from the internet to preserve data.

Page 9 - OPINION AND ORDER

review the contents as a search incident to arrest. Instead, the officer must obtain a warrant unless exigent circumstances exist. Donald, 335 at 455-56 ("Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law." )

Accordingly, I find that Solesbee violated the Fourth Amendment when he viewed the contents of plaintiff's camera without first obtaining a warrant.

Solesbee argues that qualified immunity shields him from liability for the unlawful search of the camera. Qualified immunity protects government official from liability for civil damages if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The key inquiry is whether it would be clear to a reasonable government official that the official's conduct was unlawful in the situation the official confronted. Thus, prior case law must give the government official clear warning that the official's conduct is unlawful. Hope v. Pelzer, 536 U.S. 730 (2002). Solesbee contends that the law on whether he could lawfully review the contents of plaintiff's camera as a search incident to arrest without first obtaining a warrant was unclear at the time plaintiff was arrested. I agree that the law was not settled regarding whether Solesbee could search the camera as incidental to a valid arrest. Solesbee's entitlement to qualified immunity, however, hinges on whether plaintiff's arrest was lawful because, if it was not, the search could not be justified as a search incident to a valid arrest. Robinson, 414 U.S. 224 (a search incident to a valid arrest is a traditional exception to the Fourth Amendment's warrant requirement). As noted in my earlier partial summary judgment ruling, it is not clear that plaintiff's arrest–for either resisting arrest or

Page 10 - OPINION AND ORDER

unlawful interception of communications, was lawful. The lawfulness of the arrest is a question for the jury to decide. If the jury determines that the arrest was unlawful, then Solesbee is not entitled to qualified immunity on the Fourth Amendment search of plaintiff's camera. If the jury determines the arrest was lawful, then Solesbee is entitled to qualified immunity on this claim.

## CONCLUSION

Plaintiff has established that Solesbee violated his Fourth Amendment rights by reviewing the contents of his camera without first obtaining a warrant.

Whether Solesbee is entitled to qualified immunity on this claim turns on the jury's factual determination of whether Solesbee lawfully arrested plaintiff. If the jury finds the arrest unlawful, Solesbee is not shielded from civil damages on this claim. On the other hand, if the jury finds the arrest was lawful, Solesbee is shielded from damages by qualified immunity. The parties shall prepare a jury instruction and verdict forms reflecting this ruling and both file them on CM-ECF and submit them to the court in rich text format by 5:00 PM on Wednesday, January 18, 2012.

DATED this 13th day of January 2012.

    s/ Thomas M. Coffin
    THOMAS M. COFFIN
    United States Magistrate Judge